UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE RAMNANAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HOLMES, et al.,<br><br>　　　　Defendants. | No. 2:21-cv-1113 KJN P<br><br><br>ORDER |

Plaintiff is a state prisoner, proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and paid the filing fee. This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302. Plaintiff's amended complaint is now before the court. As set forth below, plaintiff's amended complaint is dismissed with leave to amend.

Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

1   Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an
2   indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,
3   490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully
4   pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th
5   Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.
6   2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably
7   meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at
8   1227.
9         Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain
10  statement of the claim showing that the pleader is entitled to relief,' in order to 'give the
11  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic
12  Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).
13  In order to survive dismissal for failure to state a claim, a complaint must contain more than "a
14  formulaic recitation of the elements of a cause of action;" it must contain factual allegations
15  sufficient "to raise a right to relief above the speculative level."  Bell Atlantic, 550 U.S. at 555.
16  However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the
17  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v.
18  Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal
19  quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as
20  true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the
21  pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236
22  (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).
23  Plaintiff's Amended Complaint
24        Plaintiff alleges the following.  On July 2, 2019, defendant Calloway told plaintiff he
25  could not wear his bandana/handkerchief draped over his head, and when plaintiff asked
26  Calloway to what rule he was referring, Calloway referred to "policy and regulations."  (ECF No.
27  6 at 2.)  In response to challenging such policy, defendant Calloway issued plaintiff a rules
28  violation report ("RVR") 115 marked "counseling only" on July 2, 2019.  (ECF No. 6 at 25.)

Following this incident, plaintiff filed multiple appeals, and had a hearing on the RVR 115, which plaintiff claims was downgraded to an RVR Counseling Only Chrono. On July 26, 2019, plaintiff received another RVR for violation of § 3005(B) disobeying an order, based on plaintiff again wearing a handkerchief on his head. (ECF No. 6 at 117.) On August 13, 2019, defendants Jenkins and Calloway put plaintiff in restraints; Jenkins put plaintiff in a stand alone holding cage and conducted an unclothed body search of plaintiff, and a cell search of plaintiff's property. During the cell search Jenkins confiscated 75-100 sheets of filler paper. After plaintiff was released from the cage, he stopped at defendant Briniger's office to report such actions; the defendants followed plaintiff into the office. After a verbal exchange, Jenkins returned plaintiff to the holding cage and told plaintiff he would receive an RVR 115. On August 13, 2019, plaintiff was issued an RVR for violating § 3005(a), behavior which could lead to violence. On September 10, 2019, plaintiff was found guilty and sustained 30 days loss of phone privileges and 30 days loss of yard recreation privileges. (ECF No. 5 at 76.)

Plaintiff contends that the initial RVR 115 was issued in response to his challenge to the order to remove the bandana, and appears to allege that all subsequent occurrences, including denials of administrative appeals and other incidents, were in retaliation for plaintiff filing multiple inmate appeals. He claims that defendants initiated a pattern or practice of calculated harassment by falsifying and making intentionally misleading/false statements in RVRs and interviews, and violating plaintiff's rights to due process and equal protection, and subjecting him to unjust punishment.

Plaintiff seeks money damages, declaratory judgment, expungement of any RVR, and termination of the employment of defendants.[1]

Discussion

First, plaintiff's amended complaint fails to clearly identify all of the individuals he is suing in this action. In the caption of his pleading, plaintiff identifies defendants as "HOLMES ET AL." In the parties' section, plaintiff again identifies defendants as "Defendant(s) Holmes, et

---

[1] Plaintiff also seeks attorney's fees, but plaintiff is not represented by counsel.

al," and uses plural language identifying defendants as peace officers.  (ECF No. 6 at 2.)  However, throughout his pleading, plaintiff refers to various other defendants, i.e. defendant Calloway, defendant Briniger, etc.

Initially, in the caption of the complaint, amended or otherwise, plaintiff must name all the parties; subsequent filings may refer generally to other parties.  Fed. R. Civ. P. 10(a).  Similarly, the parties' section of a pleading must identify each individual named as a defendant.  This is to ensure that it is clear who plaintiff is attempting to hold responsible for the alleged violations.  Moreover, it is important that plaintiff identify each peace officer's position and title.

Second, as to his causes of action, plaintiff may not simply incorporate paragraphs 1 through 109 by reference and expect the defendants and the court to figure out which facts plaintiff contends supports the specific cause of action.  Rather, plaintiff must articulate what specific facts meet the elements of each cause of action that show how each defendant violated plaintiff's rights.  For example, with regard to his retaliation claim, as to each named defendant plaintiff must identify the specific facts showing (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); (see also ECF No. 5 at 6-7.)  The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct.  Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).

Most of plaintiff's allegations show that defendants were addressing plaintiff's appeals and subsequent rules violations.  Plaintiff provides no facts showing that a particular denial of an appeal was based on retaliation.  Plaintiff must demonstrate how the conduct of each defendant evidences retaliation.  For example, plaintiff must specifically set forth what adverse action defendant Green took because of the complaints filed by plaintiff, and that Green's adverse action chilled plaintiff's exercise of his First amendment rights, and such action had no legitimate correctional goal.  Plaintiff must do the same for every individual who plaintiff claims retaliated

against him.

    While plaintiff contends that his summary of facts demonstrates a pattern or practice of retaliation, plaintiff's facts do not support such theory. Plaintiff fails to set forth facts showing that each defendant was aware plaintiff had filed a grievance, and that such defendant took an adverse action because of plaintiff filing such grievance. What plaintiff views as a pattern or practice appears to be a series of events that take place in everyday prison life. Inmates sustain rules violations and pursue exhaustion of their administrative grievances. Rulings on such administrative grievances, without more, do not demonstrate retaliation. (ECF No. 5 at 4-5.) Moreover, absent facts not pled here, rulings on such grievances do not demonstrate a pattern or practice of retaliation.

    Finally, it is unclear whether plaintiff can state a viable retaliation claim against defendant Calloway for the initial issuance of the RVR 115.

    Inmates do not forfeit all constitutional rights when they are incarcerated. Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 137 (1977) (Burger, C.J., concurring); Bell v. Wolfish, 441 U.S. 520 (1979). However, courts also acknowledge the inherent demands of institutional correction, the deference owed to prison administrators, and the subjugation of individual liberty that lawful incarceration necessarily entails. See Jones, 433 U.S. at 132 (recognizing that prison administrators may curtail an inmate's ability to exercise constitutional rights to prevent "disruption of prison order," ensure stability, or to advance other "legitimate penological objectives of the prison environment"). As a result, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974); see also Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir.1989) ("A prison inmate is entitled to his First Amendment right to freedom of expression so long as it is not inconsistent with his status as a prisoner and does not adversely affect a legitimate state interest.") (citations omitted).

    Plaintiff appears to contend that defendant Calloway violated plaintiff's First Amendment right to verbally challenge defendant Calloway publicly. However, not every type of speech is protected by the First Amendment. See Quezada v. Herrera, 2012 WL 1076130, at *4 (E.D. Cal.

Mar. 29, 2012) (complaining that inmates had to wear hairnets not protected speech), aff'd, 520 F. App'x 559 (9th Cir. 2013); Thomas v. MCSO, 2009 WL 1311992, at *3 (D. Ariz. May 12, 2009) (calling an officer a derogatory name is not protected conduct); Ruiz v. Cal. Dept. of Corr., 2008 WL 1827637, at *2 (C.D. Cal. Apr. 22, 2008) (prisoner's comments expressing dissatisfaction about matters of personal concern to inmate was not a matter of public concern protected by the Free Speech Clause); Whitfield v. Snyder, 263 F. App'x 518 (7th Cir. 2008) (prisoner's complaint about prison job involved matters of personal, rather than public, concern and did not qualify as protected speech).  Plaintiff's comments to defendant Calloway were a challenge to the Calloway's order to remove the bandana.  They do not appear to have been matters of public concern implicating First Amendment protections.

On the other hand, plaintiff's efforts to notify defendant Briniger of the alleged misconduct by defendants Jenkins and Calloway was protected speech.  Uribe v. McKesson, 2011 WL 9640, at *12 (E.D. Cal. Jan. 3, 2011) (prisoner's attempt to report a prison official's misconduct, either "verbally or in writing, constitutes speech or conduct entitled to First Amendment protection"); see also McElroy v. Lopac, 403 F.3d 855, 858 (7th Cir. 2005) (to support a retaliation claim, a prisoner's speech "must relate to a public concern and not just a personal matter to receive First Amendment protection").

That said, a prisoner can be punished if their speech interferes with a legitimate penological interest.  See, e.g., Griffin v. Berghuis, 563 F. App'x 411, 416 (6th Cir. 2014) (speech may be punished if it "is made in a manner incompatible with the institution's legitimate penological objectives"); Caffey v. Maue, 679 F. App'x 487, 490 (7th Cir. 2017) ("Insubordinate, verbal remarks to prison staff are inconsistent with the status of a prisoner").

For all of the above reasons, plaintiff's retaliation claims are dismissed with leave to amend.

### Due Process

Third, the court next addresses plaintiff's claim that his substantive due process rights were violated.

Interests that are procedurally protected by the Due Process Clause may arise from two

sources: the Due Process Clause itself, and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (citing Vitek v. Jones, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and Washington v. Harper, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). The instant case does not involve changes so severe as to implicate the Due Process Clause.

Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation and that the liberty in question is one of "real substance." Sandin, 515 U.S. at 477-87. A state most commonly restricts the power of prison officials by a two-step process: (1) establishing "substantive predicates" to govern official decisionmaking, i.e., "particularized standards or criteria to guide the [s]tate's decisionmakers," and then (2) requiring, "in explicitly mandatory language," that if the substantive predicates are met, a particular outcome must follow. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461-64 (1989). An interest of "real substance" will generally be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." Sandin, 515 U.S. at 484, 487.

As to the second prong, an atypical and significant hardship must exist to find that a liberty interest is protected by the Due Process Clause, and the Supreme Court requires plaintiffs to demonstrate an atypical and significant hardship. Wilkinson v. Austin, 545 U.S. 209 (2005); Sandin, 515 U.S. at 472.

Here, the undersigned need not address the first prong of Sandin because plaintiff has no protected liberty interest in wearing a bandana/handkerchief on his head. Being required to remove the bandana was not a restraint that imposed an atypical and significant hardship on plaintiff in relation to the ordinary incidents of prison life. See Sandin, 515 U.S. at 483 (listing

incidents that fail to demonstrate atypical and significant hardships). In Sandin, the Supreme Court found no liberty interest protecting against a thirty-day assignment to segregated confinement because it did not "present a dramatic departure from the basic conditions of the inmate's sentence." Sandin, 515 U.S. at 485. Here, plaintiff's claim fails because he was not deprived of an interest of real substance. Thus, plaintiff should not include such claim in any amended pleading.

Plaintiff claims that defendant Briniger hearing the July 26, 2019 RVR on August 13, 2019, was a conflict of interest because Briniger heard plaintiff's July 29 appeal and denied it at the first level of review. Plaintiff claims this violated his rights to substantive due process. However, as discussed above, because plaintiff cannot demonstrate he was deprived of an interest of real substance demonstrating an atypical and significant hardship on plaintiff in relation to the ordinary incidents of prison life, plaintiff cannot state a cognizable substantive due process claim. Plaintiff should not renew this claim in any amended pleading.

If plaintiff contends his procedural due process rights were violated during a disciplinary hearing, he fails to identify which facts demonstrate such violation. Plaintiff is provided the following standards governing such claims.

Prisoners have a right to due process at prison disciplinary hearings, and the process due in such hearings includes written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. Wolff v. McDonnell, 418 U.S. 539, 564-70 (1974). Due process also requires that there be "some evidence" to support the disciplinary decision. Superintendent v. Hill, 472 U.S. 445, 454 (1985). The Due Process Clause only requires that prisoners be afforded those procedures mandated by Wolff and its progeny; it does not require that a prison comply with its own, more generous procedures. See Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994), overruled on other grounds by Sandin, 515 U.S. at 483-84. If due process is satisfied under such standards, the alleged falsification of reports or other evidence does not demonstrate any violation of plaintiff's constitutional rights. See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir.

1986); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984).

Equal Protection

Fourth, it is similarly unclear whether plaintiff can state an equal protection claim. Plaintiff fails to allege facts suggesting a violation of equal protection. Rather, in this cause of action, plaintiff contends that defendants "personally signed off on all decisions made by subordinates after being made aware of their misconduct; namely their pattern or practice of calculated harassment and code of silence." (ECF No. 6 at 12.)

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of the plaintiff's membership in a protected class. See, e.g., Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001). Or, plaintiff may set forth facts that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02 (2008), Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Prisoners and persons convicted of crimes do not "constitute a suspect class for equal protection purposes." United States v. Whitlock, 639 F.3d 935, 941 (9th Cir. 2011) (citations omitted).

Thus, while claims of unconstitutionally motivated maltreatment may implicate the right to equal protection, an equal protection claim requires membership in a protected class. See Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003). Plaintiff does not allege that he was ever subjected to discrimination on the basis of his membership in a protected class, and does not allege that he was treated differently from similarly situated individuals.

Leave to Amend

The court finds the allegations in plaintiff's amended complaint so vague and conclusory that it is unable to determine whether the current action is frivolous or fails to state a claim for relief. The court determines that the complaint does not contain a short and plain statement as

required by Fed. R. Civ. P. 8(a)(2).  Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly.  Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  Plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support plaintiff's claim.  Id.  Because plaintiff failed to comply with the requirements of Fed. R. Civ. P. 8(a)(2), the complaint must be dismissed.  The court, however, grants leave to file an amended complaint.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions about which he complains resulted in a deprivation of plaintiff's constitutional rights.  See e.g., West v. Atkins, 487 U.S. 42, 48 (1988).  Also, the second amended complaint must allege in specific terms how each named defendant is involved.  Rizzo v. Goode, 423 U.S. 362, 371 (1976).  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo, 423 U.S. at 371; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980).  Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient.  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's second amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This requirement exists because, as a general rule, an amended complaint supersedes the original complaint.  See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)).  Once plaintiff files a second amended complaint, the original pleading no longer serves any function in the case.  Therefore, in a second amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The Clerk of the Court is directed to send plaintiff the form for filing a civil rights complaint to assist plaintiff in providing all of the information required.

////

////

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's amended complaint is dismissed; and

2. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

    a. The completed Notice of Amendment; and

    b. An original of the Second Amended Complaint.

Plaintiff's second amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The second amended complaint must also bear the docket number assigned to this case and must be labeled "Second Amended Complaint."

Failure to file a second amended complaint in accordance with this order may result in the dismissal of this action

3. The Clerk of the Court is directed to send plaintiff the form for filing a civil rights complaint by a prisoner.

Dated:  January 19, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/cw/ramn1113.14am

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| ANDRE RAMNANAN, | No. 2:21-cv-1113 KJN P |
|---|---|
| Plaintiff, | |
| v. | NOTICE OF AMENDMENT |
| HOLMES, et al., | |
| Defendants. | |

   Plaintiff hereby submits the following document in compliance with the court's order filed January 2022.

DATED: _____    Amended Complaint

_____
Plaintiff

1